**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 22nd day of September, 2025.**



_____
Robert D. Berger
United States Bankruptcy Judge

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**LUCAS LEIGH EIMERS
and ANDREA D'ACHIARDI**,

         Debtors.

Case No. 18-20219
Chapter 13

---

**LUCAS LEIGH EIMERS
and ANDREA D'ACHIARDI**,

         Plaintiffs,

         v.

**EDUCATIONAL COMPUTER
SYSTEMS, INC., et al.**,

         Defendants.

Adv. No. 23-06020

---

## MEMORANDUM OPINION AND ORDER

This is a proceeding to determine whether debtor Andrea D'Achiardi's student loans are excepted from discharge under 11 U.S.C. §§ 523(a)(8) and 1328(a).[1] The Court held an evidentiary hearing on May 9, 2025. This memorandum contains the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. A separate judgment will be entered pursuant to Fed. R. Bankr. P. 7058.

## **FINDINGS OF FACT**

Plaintiff Andrea D'Achiardi is a 37-year-old nurse practitioner at the Kansas City Veterans Affairs Medical Center. Her husband, plaintiff Lucas Eimers, is a 44-year-old master deputy at the Johnson County Sheriff's Office. Their combined gross income is around $244,000 per year, and they do not have any children.

D'Achiardi earned a bachelor's degree in nursing from the University of Kansas in 2010.[2] After obtaining her bachelor's degree, she took premedical classes at Johnson County Community College and Washington University. She then attended medical school at the University of Kansas from 2015 to 2017 but left without a degree. Although she passed all her medical-school classes, she did so

---

[1] A proceeding to determine the dischargeability of a debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

Debtors appear by attorney George Thomas. The University of Kansas Medical Center appears by attorney Matthew Stromberg. Washington University appears by attorneys John Cruciani and Morgan Hutchinson. The Educational Credit Management Corporation appears by attorneys N. Larry Bork and Andrew Tague. The United States Department of Education appears by attorney Christopher Allman.

[2] *See* Response to Interrogatory No. 2, Defs.' Ex. L.

2

with difficulty. She left medical school due to health issues and stress. In 2022, D'Achiardi earned a master's degree in nursing from the Research College of Nursing.[3]

D'Achiardi has four student-loan creditors: the University of Kansas Medical Center ("**KU Med Center**"), Washington University ("**Wash U.**"), the Educational Credit Management Corporation ("**ECMC**"), and the U.S. Department of Education ("**DOE**"). She owes $231,566.82 to the KU Med Center; $6,258.76 to Wash U.; $6,798.58 to ECMC; and $71,815 to the DOE.[4] To repay those amounts over a 10-year period (the original term of each of the loans) would require her to make monthly payments of $3,046.63 to the KU Med Center; $66.38 to Wash U.; $78.24 to ECMC; and $803.19 to the DOE[5]—a total of $3,994.44 per month.

D'Achiardi and Eimers filed for bankruptcy on February 14, 2018. They received a Chapter 13 discharge pursuant to 11 U.S.C. § 1328(a) on May 2, 2023. Two and a half months later, they filed this proceeding. On October 2, 2023, just

---

[3] *See* Response to Interrogatory No. 2, Defs.' Ex. L.

[4] *See* Defs.' Ex. W (KU Med Center loan); Defs.' Ex. O (Wash U. loan); Defs.' Ex. R (ECMC loan); Defs.' Exs. J, K (DOE loans). For purposes of this order, the Court assumes that the loan reflected on Defendants' Exhibit K (which lists the Texas Guaranteed Student Loan Corporation as the "Guaranty Agency") is owed to the DOE.

[5] *See* Defs.' Ex. W (reflecting $3,046.63 monthly payment amount); *cf.* Pretrial Order 4, ECF 68 (reflecting 5% interest rate on Washington University loan); Defs.' Ex. R (reflecting 6.8% interest rate on ECMC loan); Defs.' Exs. J, K (reflecting loan type and award year for each U.S. Department of Education loan). Historical interest rates for Stafford subsidized, Stafford unsubsidized, and Perkins loans are available at https://studentaid.gov/understand-aid/types/loans/interest-rates#older-rates (last visited June 27, 2025).

3

five months after receiving a discharge, they purchased a 2023 Mercedes GLB for approximately $60,000 at 12.5% interest.[6] The current balance of the loan (which is in Eimers' name) is around $55,000.[7]

At trial, Eimers and D'Achiardi reported monthly take-home pay (after taxes and other payroll deductions) of $4,547 and $6,354, respectively, for a combined monthly income of $10,901:[8]

|  | Eimers | D'Achiardi |
|---|---|---|
| Monthly gross wages, salary, and commissions | $7,696 | $12,671 |
| Tax, Medicare, and Social Security deductions | $1,777 | $3,552 |
| Mandatory contributions for retirement plans | $579 | $257 |
| Voluntary contributions for retirement plans | $321 | $1917 |
| Required repayments of retirement fund loans | $0 | $315 |
| Insurance | $72 | $236 |
| Union dues | $0 | $40 |
| HSA | $400 | $0 |
| **Monthly take-home pay** | **$4,547** | **$6,354** |

---

[6] *See* Trial Tr. 58. The Mercedes was $55,000 before taxes and cost, including a maintenance package, $63,000 after taxes. *See* Trial Tr. 55. In addition to the Mercedes, Eimers and D'Achiardi considered a 2024 Honda CR-V Hybrid, which would have cost $46,462 after taxes, and a 2023 Acura RDX, which would have cost $59,343 after taxes. *See* Trial Tr. 56-57 (referring to Defs.' Ex. I). D'Achiardi testified that they looked at other vehicles as well, "but they didn't feel as safe as the Mercedes." Trial Tr. 57.

[7] *See* Trial Tr. 36:22-37:3.

[8] *See* Schedule I, Pls.' Ex. 4. When Eimers and D'Achiardi filed for bankruptcy in 2018, they reported a combined monthly income of $4,827. *See* Schedule I, Case No. 18-20219, ECF 1.

And they reported monthly expenses totaling $9,950:[9]

| Rental or home ownership expenses | $1,227 |
| --- | --- |
| Home maintenance, repair, and upkeep expenses | $400 |
| Electricity, heat, natural gas | $290[10] |
| Water, sewer, garbage collection | $247 |
| Telephone, cell phone, internet, satellite, and cable services | $254 |
| Dogs | $265 |
| Dropbox | $20 |
| 401(k) loan | $315 |
| Union dues | $20 |
| Food and housekeeping supplies | $1,600[11] |
| Clothing, laundry, and dry cleaning | $300 |
| Personal care products and services | $300[12] |
| Medical and dental expenses | $360 |
| Transportation | $200 |
| Entertainment | $300 |

---

[9] See Schedule J, Pls.' Ex. 4. When Eimers and D'Achiardi filed for bankruptcy in 2018, they reported monthly expenses totaling $3,987. See Schedule J, Case No. 18-20219, ECF 1.

[10] During the year before the hearing, they paid an average of $79.38 per month for natural gas and $136.75 per month for electricity. See Pls.' Ex. 13 at 5 (listing payments of $92.15, $75.15, $65.14, $66.14, $71.14, $73.14, $76.14, $79.14, $83.59, $87.59, $87.59, and $95.59 for natural gas between April 2024 and March 2025); id. at 6 (listing five payments of $143.00, two payments of $163.00, and five payments of $120.00 for electricity between April 2024 and March 2025).

[11] D'Achiardi testified that their food spending is high because they frequently invite their parents over for lunch or dinner. See Trial Tr. 53:2-9. She explained that their food spending had increased from $550 to $1,600 because food prices have increased. See Trial Tr. 74. She acknowledged that the original $550 amount also included her parents. See id.

[12] D'Achiardi testified that the $300 monthly expense for personal care, which includes shampoo, conditioner, haircuts, hair coloring, hair spray, and makeup, is "for professionalism." Trial Tr. 28:1-11; see Pls.' Ex. 16.

5

| Charitable contributions and religious donations | $75 |
|---|---|
| Life insurance | $482 |
| Health insurance | $472 |
| Vehicle insurance | $264 |
| Mom's Medicare | $185 |
| Exercise | $30 |
| Parent care | $100 |
| Car payments for Vehicle 1 | $1,221 |
| Vehicle registration | $50 |
| Real estate taxes | $31 |
| Homeowner's association or condominium dues | $42 |
| Emergency fund for old vehicle, professional continuing education, licenses, conferences, attorney | $900 |
| **Total** | **$9,950** |

Based on these figures, Eimers and D'Achiardi calculate their monthly net income—i.e., the amount available to repay D'Achiardi's student loans[13]—as $951. However, that calculation:

- Fails to include the $8,478 in tax refunds they received in 2024;[14]
- Subtracts D'Achiardi's 401(k) loan payments twice;[15]
- Subtracts health insurance expenses twice;[16] and

---

[13] Eimers and D'Achiardi do not argue that their income or expenses should be considered separately in any way for purposes of § 523(a)(8).

[14] Eimers and D'Achiardi received tax refunds of $2,998 (federal); $159 (Missouri); and $5,321 (Kansas) for the 2024 tax year. *See* Pls.' Ex. 5 at 2 (federal); *id.* at 9 (Missouri); *id.* at 15 (Kansas). Part of the Kansas refund was garnished and applied to the KU Med Center student loan debt. *See* Trial Tr. 51:12-15.

[15] *Compare* Pls.' Ex. 4, Schedule I, line 5d, *with* Schedule J, line 6d.

[16] *Compare* Pls.' Ex. 4, Schedule I, line 5e (subtracting payroll deductions of $72 and $236 for insurance), *with* Schedule J, line 15b (subtracting $472 for health

6

- Subtracts medical and dental expenses twice.[17]

Including the tax refunds adds one-twelfth of $8,478, or $706.50, to their monthly net income. Correcting the double-counted 401(k) loan payments, health insurance expenses, and medical and dental expenses adds another $1,023.00.[18]

IRS national standards in effect on May 9, 2025, allowed $820 for food, $75 for housekeeping supplies, $157 for apparel and services, and $80 for personal care products and services for a two-person household.[19] IRS local standards in effect on May 9, 2025, allowed $619 for the ownership cost of one car.[20]

IRS national standards in effect on February 14, 2018, allowed $612 for food; $65 for housekeeping supplies; $138 for apparel and services; and $63 for personal care products and services for a two-person household.

---

insurance). D'Achiardi testified that the $472 expense for health insurance includes "other medical expenses." *See* Trial Tr. 31:12-22.

[17] *Compare* Pls.' Ex. 4, Schedule I, line 5h (subtracting $400 for HSA contributions), *with* Schedule J, line 11 (subtracting $360 for medical and dental expenses).

[18] $315 (401(k) loan) + $72 (Eimers insurance payroll deduction) + $236 (D'Achiardi insurance payroll deduction) + $400 (Eimers HSA contributions) = $1,023.00.

[19] *See* IRS National Standards for Allowable Living Expenses (Cases Filed Between April 1, 2025 and May 14, 2025, Inclusive), *available at* https://www.justice.gov/ust/eo/bapcpa/20250401/bci_data/national_expense_standards.htm (last visited June 27, 2025).

[20] *See* IRS Local Transportation Expense Standards – Midwest Census Region (Cases Filed Between April 1, 2025 and May 14, 2025, Inclusive), *available at* https://www.justice.gov/ust/eo/bapcpa/20250401/bci_data/IRS_Trans_Exp_Stds_MW.htm (last visited July 3, 2025).

**CONCLUSIONS OF LAW**

Debts "of the kind specified in" 11 U.S.C. § 523(a)(8) are excepted from discharge under 11 U.S.C. § 1328(a). *See* 11 U.S.C. § 1328(a)(2). Section 523(a)(8) specifies debts:

> unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution;
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8).

As an initial matter, all the student loans at issue here belong to D'Achiardi alone. Because there is no evidence that Eimers owes any "debt" to which § 523(a)(8) might apply, the defendants are entitled to judgment vis-à-vis Eimers.

Thus, the issue before the Court is whether excepting D'Achiardi's student loans from discharge would impose an undue hardship on her and her dependents. In the Tenth Circuit, "undue hardship" is determined under the three-factor test set out in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d. Cir. 1987), which requires a debtor to prove by a preponderance of the evidence:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for

> herself and her dependents if forced to repay the loans; (2)
> that additional circumstances exist indicating that this
> state of affairs is likely to persist for a significant portion
> of the repayment period of the student loans; and (3) that
> the debtor has made good faith efforts to repay the loans.

*Educational Credit Management Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004) (quoting *Brunner*, 831 F.2d at 396); *see id.* at 1309 (adopting *Brunner* framework); *Grogan v. Garner*, 498 U.S. 279, 291 (1991) (holding that preponderance-of-the-evidence standard applies in § 523(a) actions). "Under the *Brunner* analysis, if the court finds against the debtor on any of the three parts, the inquiry ends and the student loan is not dischargeable." *Polleys*, 356 F.3d at 1307.

As to the first prong of *Brunner*, D'Achiardi argues that she cannot maintain a minimal standard of living if forced to repay her student loans because her current monthly net income is, by her calculation, only $951.00[21]—whereas repayment of the loans would require "thousands of dollars, which is impossible."[22] This argument has two flaws. First, D'Achiardi's current monthly net income is not $951.00. In calculating that figure, she omitted $706.50 in tax refunds and double-counted $308.00 in health insurance expenses, $400.00 in medical and dental expenses, and $315.00 for 401(k) loan payments. Correcting these basic errors increases D'Achiardi's current monthly net income from $951.00 to $2,680.50.

---

[21] Because all parties to this proceeding assume that all of Eimers's income and expenses are D'Achiardi's for purposes of § 523(a)(8), the Court will do the same here.

[22] Pls.' Brief 6, ECF 78.

9

Second, Eimers and D'Achiardi's current expenses grossly exceed those required to maintain a minimal standard of living.[23] A "minimal" standard of living does not require "abject poverty," but *does* require a debtor to live "within the strictures of a frugal budget." *Murray v. Educ. Credit Mgmt. Corp. (In re Murray)*, 563 B.R. 52, 58 (Bankr. D. Kan. 2016). The following monthly expenses are beyond the strictures of a frugal two-person budget:

- $1,600.00 for food and housekeeping supplies;
- $300.00 for clothing, laundry and dry cleaning;
- $300.00 for personal care products and services;
- $300.00 for entertainment;
- $1,917.00 in voluntary retirement contributions by D'Achiardi;
- $900.00 for an emergency fund; and
- $1,221.00 for a new Mercedes.

By the Court's calculation, D'Achiardi could repay her student loans in full over ten years with monthly payments totaling $3,994.44.[24] Her current monthly net income of $2,680.50 falls $1,313.94 short of that amount. She could make up the entire $1,313.94 difference by reducing her monthly voluntary retirement contributions to $600.00—which is still nearly 5% of her gross income, and which is

---

[23] "Minimal standard of living" is the applicable standard, not (as D'Achiardi argued at trial) whether the expenses constitute "egregious misbehavior" (Trial Tr. 141:8), or whether they are "abusive or unreasonable" (Trial Tr. 145:4).

[24] *See* page 3 & notes 4-5 *supra*. The Court's calculation is necessary because D'Achiardi did not provide any specific amounts beyond arguing that repayment would require "thousands."

10

Case 23-06020    Doc# 88    Filed 09/22/25    Page 10 of 11

*in addition to* her mandatory retirement contributions of $257.00, Eimers' mandatory retirement contributions of $579.00, Eimers' voluntary retirement contributions of $321.00, and Eimers' whole-life insurance premiums of $482.00. She and Eimers could free up $1,068.00 more each month by reducing their expenditures on food, clothing, and personal care to IRS national standard amounts.[25] They could save an additional $300.00 by, say, reducing their monthly entertainment spending to $150.00 and their monthly emergency-fund contributions to $750.00. There is simply too much room in D'Achiardi's budget—without even considering the Mercedes—for the Court to find that she cannot maintain a minimal standard of living for herself and her dependents if forced to repay her student loans. Because D'Achiardi has not satisfied the first prong of the *Brunner* test, the inquiry ends: her student loans are excepted from discharge under 11 U.S.C. §§ 523(a)(8) and 1328(a)(2). Defendants are entitled to judgment.

This memorandum constitutes the Court's findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure, which makes Rule 52(a) of the Federal Rules of Civil Procedure applicable to this proceeding. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 7058, which makes Federal Rule of Civil Procedure 58 applicable to this proceeding.

IT IS SO ORDERED.

###

---

[25] ($1,600 − $895) + ($300 − $157) + ($300 − $80) = $1,068.